Commonwealth of Pennsylvania, Department of Transportation, Appellant, *v.* Commonwealth of Pennsylvania, Pennsylvania Public Utility Commission, Appellee.

Argued February 4, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Herbert G. Zahn,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, for appellant.

*John B. Wilson,* Assistant Counsel, with him *R. Knickerbocker Smith, Jr.,* Assistant Counsel, and *Philip P. Kalodner,* Counsel, for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, May 21, 1974:

On September 5, 1973, the Pennsylvania Department of Transportation (PennDOT) took an appeal

to this Court from "Orders" of the Pennsylvania Public Utility Commission (PUC), which, PennDOT asserts, were entered on August 28 and August 29, 1973. Arguing that actions taken by the PUC on August 28 and 29, 1973, are not appealable orders, PUC moves to quash the appeal for the reason that it is untimely and improperly taken. The facts are as follows.

On May 26, 1969, the PUC instituted a complaint proceedings on its own motion ordering an investigation to determine whether an existing 11-span bridge, known as the Eighth Street-Juniata Bridge, carrying vehicular and pedestrian traffic over and above the Little Juniata River and thirty-three tracts of the Penn Central Transportation Company (Railroad) in Logan Township, Blair County, was dangerous and inadequate, whether corrective measures were required, and who should bear the cost of correction and future maintenance, if needed. Named respondents in this complaint were Penn Central Transportation Company, Township of Logan (Logan), City of Altoona (Altoona), County of Blair (Blair), and Department of Highways (now PennDOT).

The initial hearing on the complaint was held January 6, 1970, at which time testimony was presented to the PUC hearing examiner. On September 14, 1971, the Court of Common Pleas of Blair County, on the joint motion of Logan, Altoona, and Blair, declared the Eighth Street Bridge and its connecting roadways to be a "public highway."[1] A second hearing was conducted by the PUC on December 7, 1971, to take further evidence on its initial complaint.[2] On May 23, 1972, the

---

[1] PennDOT, however, was not a party to these proceedings, it having successfully moved to be dismissed therefrom, because the Court of Common Pleas of Blair County lacked jurisdiction over PennDOT.

[2] PennDOT objected to this second hearing being a "continued" hearing on the original complaint and pressed for a hearing de

PUC, pursuant to its initial complaint, ordered Penn-DOT to undertake an in-depth safety inspection of the Eighth Street Bridge and a corridor study thereof.[3] No appeal was taken from this order by PennDOT.

On July 27, 1972, the Secretary of Transportation, Jacob G. Kassab, communicated by letter to the Chairman of the PUC, George I. Bloom, requesting the PUC to reconsider the May 23, 1972, order and modify it to provide that one of the other parties engage a consultant to do the required studies. This request was reiterated by a second letter to the Chairman dated October 11, 1972, to which Chairman Bloom responded on October 20, 1972, advising that the PUC would not react to the Secretary's proposal at that time, but that he, the Chairman, would contact some interested parties and inform the Secretary of his decision later.

On August 28, 1973, by letter, Chairman Bloom advised the Secretary of Transportation that because the Legislature specifically allocated funds for this project in a supplemental appropriation to PennDOT, there was no need for the PUC to reconsider its outstanding order. On August 29, 1973, the PUC met in Executive Session with officials of PennDot and then, by unanimous vote, directed its Law Bureau to take appropriate action to seek compliance with its outstanding order of May 23, 1972. PennDOT seeks to appeal from the Chairman's decision announced in his letter to Secretary Kassab dated August 28, 1973, and from the PUC's internal directive to its Law Bureau dated August 29, 1973.

---

novo. PennDOT argued that if the Bridge was first declared a "public highway" on September 14, 1971, then the PUC lacked jurisdiction to hold the first hearing, i.e., it was void. Accordingly, it argued, the second hearing could not be a "continued" hearing, and if it were, it too was void.

[3] Service of this order was made on PennDOT on May 26, 1972.

The sole issue before this Court on the motion to quash is whether the actions taken by the PUC Chairman and the PUC on August 28 and August 29, 1973, respectively, are appealable orders. We think that they are not.

PennDOT seeks to convince this Court that Secretary Kassab's letters to Chairman Bloom of July 27, 1972, and October 11, 1972, constitute a petition for amendment within the purview of Section 1007 of the Public Utility Law, Act of May 28, 1937, P. L. 1053, 66 P.S. §1397. Next, PennDOT urges that the August 28 and August 29, 1973, actions of Chairman Bloom and the PUC constitute denials of such a "petition" and are, therefore, appealable. *See Department of Transportation v. P.U.C.,* 3 Pa. Commonwealth Ct. 554, 284 A. 2d 330 (1971).

PennDOT has not convinced this Court that Secretary Kassab's letters to Chairman Bloom constitute a petition under Section 1007 of the Public Utility Law. In the first place, the Secretary's letters do not comply with Rule No. 54 of the Rules of Practice and Procedures of the Public Utility Commission (relating to Form and Content of Petitions), nor Rule No. 55 (relating to Filing and Service of Petitions). Secondly, the correspondence which is a part of the record in this case, appears to be, as appellee urges that it is, simply a series of letters. designed to bring about an amicable solution to a highly sensitive political problem. Even though the Secretary's letters do raise the substantive complaints by PennDOT with respect to the PUC order, these issues are properly raised on a petition for rehearing under Section 1006, on a petition to amend under Section 1007, or on appeal under Section 1101 of the Public Utility Law, 66 P.S. §1431, *not* through informal correspondence or meetings in the nature of negotiations. Neither informal letters nor executive session meetings will be allowed to supplant

the statutory framework of the Public Utility Law under Sections 1006, 1007 and 1101, or the rules of practice set forth by the PUC. *See Department of Transportation v. P.U.C., supra,* 3 Pa. Commonwealth Ct. at 559-60, 284 A. 2d at 333.

Furthermore, this Court is convinced that PUC has not waived its procedural rules in this case, nor has it given any indication that it would.

Having resolved the above issue in favor of the appellee, it is not necessary to decide the other issues presented by the appellant in its brief.

Accordingly, we enter the following

#### ORDER

Now, May 21, 1974, motion to quash the appeal docketed to No. 1197 Commonwealth Docket 1973 filed by the Pennsylvania Public Utility Commission is hereby granted and the appeal is dismissed.